05-1044-ag
Aslam v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Submitted: July 8, 2008)                                      Decided: August 8, 2008)

Docket No. 05-1044-ag

_____

MUHAMMAD ASLAM,

Petitioner,

v.

MICHAEL B. MUKASEY, UNITED STATES ATTORNEY GENERAL,[1]

Respondent.

_____

Before: POOLER, HALL, Circuit Judges, TRAGER, District Judge.[2]

_____

Petitioner Muhammad Aslam, a native and citizen of Pakistan, petitions us pro se to

review the final order of removal issued against him entered by the Board of Immigration

Appeals ("BIA") on February 11, 2005.  The BIA summarily affirmed, without an opinion, the

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto Gonzales as the respondent in this case.

[2] The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

1

October 28, 2003 order of Immigration Judge ("IJ") denying Aslam's application for relief in the form of an adjustment of status to that of a lawful permanent resident, pursuant to section 235 of the Immigration and Nationality Act of 1952 ("INA"), as amended, 8 U.S.C. § 1255. The IJ determined that Aslam is ineligible to adjust his status, because he is inadmissible to the United States under INA section 212(a)(6)(C)(I), 8 U.S.C. § 1182(a)(6)(C)(I). Because we agree with the IJ that the petitioner cannot demonstrate that he is admissible to the United States, we DENY the petition for review.

MUHAMMAD ASLAM, pro se, Brooklyn, N.Y., for Petitioner.

ROSLYNN R. MAUSKOPF, United States Attorney for the Eastern District of New York (Scott Dunn, Assistant United States Attorney, Dione M. Enea, Special Assistant United States Attorney, on the brief), Brooklyn, N.Y., for Respondent.

_____

PER CURIAM:

Petitioner Muhammad Aslam, a native and citizen of Pakistan, petitions us pro se to review the final order of removal issued against him entered by the Board of Immigration Appeals ("BIA") on February 11, 2005. The BIA summarily affirmed, without an opinion, the October 28, 2003 order of the Immigration Judge ("IJ") denying Aslam's application for relief in the form of an adjustment of status to that of a lawful permanent resident, pursuant to section 235 of the Immigration and Nationality Act of 1952, ("INA"), as amended, 8 U.S.C. § 1255. The IJ determined that Aslam is ineligible to adjust his status because he is inadmissible to the United States under INA section 212(a)(6)(C)(I), 8 U.S.C. § 1182(a)(6)(C)(I).

Aslam, a native and citizen of Pakistan, entered the United States without inspection at an unknown date. In both 1997 and 2000, Aslam filed applications to adjust his status based on two

2

different marriages to United States citizens. Both applications were denied: his 1997 application was denied because it was deemed abandoned, and his 2000 application was denied for fraud. In February 2002, Aslam was issued a notice to appear in immigration court in Ohio based on his illegal entry into the United States; the venue was subsequently changed to New York. In June 2002, he applied for an employment immigrant visa, and in November 2002, he applied to adjust his status, based on his visa application, as relief from removal. In December 2002, the notice to appear was amended to charge Aslam with removability based on his attempts to fraudulently procure a visa through his two prior marriage petitions. Aslam denied those charges.

On January 29, 2003, the Government filed a motion to introduce video conference testimony of its key witnesses, in order to prove its fraud allegations. Specifically the Government sought to present videoconference testimony of Aslam's two ex-wives and the Special Agent who had previously conducted Aslam's adjustment of status interviews. At that time, Aslam opposed the video testimony arguing that it violated his Fifth Amendment rights to due process. At the merits hearing held on April 30, 2003, the IJ granted the Government's request for videoconferencing testimony, but also told Aslam that he would "entertain a motion to transfer venue to Cleveland[, Ohio] so the witnesses can appear in person." Aslam's attorney chose not to file such a motion and a merits hearing took place in New York, with the videoconference testimony of a key witness.

At the merits hearing, Aslam's first ex-wife, Justine Netola, testified via videoconference that she had been paid to marry Aslam so that he could obtain legal status in the United States and that their marriage was fraudulent. When asked if she saw Aslam in Court she stated "Yes." When asked what he was wearing she stated, "I can't, he's got something dark on, I can't really

3

see him all that well. . . . No, he just raised his hand. He's sitting next to the woman in the purple shirt." Thereafter the Judge stated, "[l]et the [record] reflect respondent is identified, the witness has identified the respondent."

Netola testified that she had been paid $1,500 to marry Aslam and had been promised that she would be paid additional money, some of which she later received, for each month she remained married to Aslam. She further testified that this marriage was never consummated; that, while they had a joint bank account, and filed joint taxes together one year, they never actually lived together as husband and wife. Netola testified that she knew it was illegal to engage in marriage fraud. No other witnesses testified at the hearing.

On appeal, petitioner makes three arguments. First, that the use of videoconferencing testimony of a witness at his hearing before the immigration judge violated his rights under the due process clause. Second, that the Government failed to meet its burden of proof by failing to establish that petitioner engaged in fraudulent marriage. Third, that the BIA abused its discretionary powers by affirming the IJ's order without an opinion.

### Standard and Scope of Review

When the BIA summarily affirms the decision of the IJ without issuing an opinion, see 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency determination. See, e.g., Twum v. INS, 411 F.3d 54, 58 (2d Cir. 2005); Yu Sheng Zhang v. U.S. DOJ, 362 F.3d 155, 158 (2d Cir. 2004). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Thus, we will reverse a finding of fact only if "a reasonable fact finder would be compelled to reach a contrary conclusion." Zhi Wei Pang v. BCIS, 448 F.3d 102, 107 (2d Cir. 2006); see also Cao He Lin v.

4

U.S. Dep't of Justice, 428 F.3d 391, 400 (2d Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).  We review legal issues, including the application of the law to the facts, de novo.  See Secaida-Rosales v. INS, 331 F.3d 297, 307 (2d Cir. 2003).

### *Due Process Violation*

Petitioner argues that the use of videoconferencing testimony of a witness at his hearing before the IJ violated his due process rights.  It is important to note that the Federal Rules of Evidence do not apply in removal proceedings; rather, "[e]vidence is admissible provided that it does not violate the alien's right to due process of law." Zhen Nan Lin v. United States DOJ, 459 F.3d 255, 268 (2d Cir. 2006). The standard for due process is therefore satisfied in immigration proceedings if the evidence "is probative and its use is fundamentally fair," fairness in this context being "closely related to the reliability and trustworthiness of the evidence." Id. (internal quotation marks omitted); see Felzcerek v. INS, 75 F.3d 112, 115 (2d Cir. 1996).

Congress explicitly granted IJs statutory authority to conduct removal proceedings via video conference.  8 U.S.C. § 1229a(b)(2)(A)(iii).  Because an IJ has statutory authority to conduct entire proceedings via videoconference, it follows, and we so hold, that an IJ also has the authority to allow witnesses to testify at immigration proceedings via videoconference. However, such testimony, while statutorily permitted, must nevertheless still accord with the constitutional requirements for due process under Mathews v. Eldridge: "due process requires, at a minimum, that the INS adopt procedures to ensure that asylum petitioners are accorded an opportunity to be heard at a meaningful time and in a meaningful manner, i.e., that they receive a full and fair hearing on their claims."  Rusu v. INS, 296 F.3d 316, 321-22 (4th Cir. 2002) (applying the requirements for due process set forth in Matthews v. Eldridge, 421 U.S. 319, 333

(1976), to immigration proceedings). See also Eke v. Mukasey, 512 F.3d 372 (7th Cir. 2008) (noting that no court has ever held that the use of a videoconference in an immigration proceeding violated the due process clause, but agreeing that Mathews v. Eldridge should guide the court's analysis in such a context). As the Fourth Circuit explained, when analyzing the use of videoconferencing in immigration proceedings,

> [R]egardless of how rapidly technological improvements, such as video conferencing, may advance, the Government remains obliged to ensure that asylum petitioners are accorded a meaningful opportunity to be heard before their cases are determined. In this regard, the procedures utilized in [petitioner]'s hearing could have resulted in the denial of a full and fair hearing on his claim. The utilization of video conferencing, although enhancing the efficient conduct of the judicial and administrative process, also has the potential of creating certain problems in adjudicative proceedings. . . .virtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it. More specifically, video conferencing may render it difficult for a factfinder in adjudicative proceedings to make credibility determinations and to gauge demeanor.

Rusu, 296 F.3d at 322. Thus, while videoconferencing, including videoconference testimony of witnesses, is permissible in immigration proceedings, admission of such evidence must accord with the constitutional requirements of the Due Process Clause.

Here, however, petitioner's due process rights were not violated by the admission of videoconference testimony of a witness at his immigration hearing. In this case, it was not petitioner that was being interviewed via videoconference, but rather a key witness: his ex-wife who testified that she engaged in a fraudulent marriage with the petitioner. The admission of such evidence was clearly probative, and there is no evidence in the record that its use was not fundamentally fair. See Zhen Nan Lin, 459 F.3d at 268. Significantly, the IJ presented the petitioner with the opportunity to file a motion to transfer venue in light of the fact that key witnesses were located in Ohio and would have to testify via videoconference; the petitioner,

6

however, declined this opportunity. Then, at the hearing, the petitioner had a full opportunity to confront and cross-examine the witness, his ex-wife, and to draw attention to any credibility issues or inconsistencies in her testimony. And, finally, petitioner fails to persuasively argue that he was prejudiced through the videoconference testimony; while he highlights potential contradictions in the witness' testimony, such credibility determinations were for the IJ to make, and there is no evidence in the record to suggest that the IJ's factual determinations were flawed.

We therefore find that the petitioner's due process rights were not violated at the immigration hearing when a key witness was permitted to provide testimony via videoconference.

***Adjustment of Status Claim***

We have jurisdiction to review Aslam's claim regarding his eligibility to adjust his status, because he questions the Agency's conclusions regarding his statutory eligibility, <u>Xiao Ji Chen v. U.S. Dep't of Justice</u>, 471 F.3d 315, 324 (2d Cir. 2006) (we retain jurisdiction to decide constitutional claims and questions of law), and not a discretionary agency determination, <u>Mariuta v. Gonzales</u>, 411 F.3d 361, 365 (2d Cir. 2005) (finding that we lack jurisdiction to review a BIA's discretionary denial of a motion to reopen removal proceedings to adjudicate an adjustment of status application). There appears to be some confusion between the parties, and on the part of the IJ, about which party was required to meet what burden. In removal proceedings, the Government has the burden of proving removability. 8 U.S.C. § 1229a(c). However, if an individual has not been admitted and/or requests relief from removal, it is the alien's burden to show admissibility and/or eligibility for relief. <u>Id.</u> Thus, it was the Government's burden to prove that Aslam was removable based on the charges in the notice to

7

appear; it was then Aslam's burden to show that he was eligible for the relief he sought -- i.e. adjustment of status.

Here, Aslam admitted that he had entered the United States without inspection, thereby rendering him inadmissible on that ground, and in October 2003, Aslam conceded that he was removable. The Government also argued before the IJ that Aslam's first marriage was fraudulent. To prove its assertion, the Government introduced the report of Special Agent Matthew J. Hamulak, who had previously interviewed Aslam's first two wives and obtained statements by which they withdrew their petitions for adjustment of status on Aslam's behalf. Aslam now argues that the Agent Hamulak should have been forced to testify at the hearing before the IJ so that Aslam's counsel could cross-examine him regarding alleged inconsistencies in his report. Aslam also argues that the report was inadmissible hearsay. At the hearing before the IJ, however, Aslam's counsel objected when the IJ asked the Government whether it intended to call Agent Hamulak to testify. Counsel stated, "I'm going to object to the testimony of the special agent considering that you have [Aslam's first ex-wife] Ms. Netola here and I don't think it's going to add to the testimony aside from statements made by [Aslam's second ex-wife] Ms. Michelle Aslam in which she also indicated the marriage as not fraudulent." Further, Aslam did not object to the admission of the Agent's report into evidence at the hearing. Because Aslam objected to the Government's introduction of Special Agent Hamulak's live testimony and failed to object to the admission of the agent's report, neither the IJ's failure to compel the Special Agent's testimony nor the introduction of the report into evidence violated Aslam's due process rights.

The Government also introduced the testimony of Aslam's first wife, Netola– who claimed that she was paid money to marry Aslam and that their marriage was fraudulent. Aslam

8

argues that Netola's testimony was not credible and, thus, that the record does not support the IJ's conclusion that their marriage was fraudulent. However, the IJ's determination that Netola was credible and that she and Aslam entered into a fraudulent marriage are findings of fact that were supported by substantial evidence in the record. See Zhou Yun Zhang, 386 F.3d at 73. Testifying under oath against her own penal interests, Netola admitted that she violated the law by knowingly entering into a fraudulent marriage. During cross-examination, Netola admitted that she knew that she had violated the law when she married Aslam. Accordingly, at the hearing, Aslam's attorney had a full opportunity to undermine Netola's credibility. It was thereafter up to the IJ to make credibility determinations and findings of fact. Given the evidence in the record that Aslam had entered into two fraudulent marriages, the IJ did not err in determining either that Netola had testified credibly regarding her marriage to Aslam or that the Government had met its burden of proof in establishing Aslam's removability based on that fraudulent marriage.

Once the Government met its burden of demonstrating that Aslam was removable, Aslam was required to demonstrate his eligibility for the relief he sought, i.e. adjustment of status based on his employment-based petition. However, in order to do so, he first had to show that he is admissible to the United States. See 8 U.S.C. § 1255(a) (stating that an applicant can be granted discretionary adjustment of status if, inter alia, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence"). Unfortunately for Aslam, a person is inadmissible if he, by fraud or willfully misrepresenting a material fact, seeks to procure a visa, other documentation, or admission into the United States. See INA § 212(a)(6)(C), 8 U.S.C. § 1182(a)(6)(C). At the hearing before the IJ, Aslam did not testify that his first marriage to Netola was genuine, nor did he present any evidence refuting Netola's

9

testimony, nor did he present any additional evidence to support a finding that his first marriage was not fraudulent. Thus, we find that the IJ did not err in concluding that the Government met its burden of showing that Aslam is removable from the United States. We also find that the IJ did not err in determining that Aslam could not demonstrate that he was eligible to adjust his status. We therefore deny his request for review on both matters.

***The BIA's Summary Affirmance***

Finally, there is no merit to petitioner's argument that the BIA abused its discretion by summarily affirming the IJ's opinion. We have explained that "summary affirmance by the BIA is permissible when the immigration judge's decision below contains sufficient reasoning and evidence to permit proper judicial review." Yu Sheng Zhang v. United States DOJ, 362 F.3d 155, 158 (2d Cir. 2004); Shunfu Li v. Mukasey, 2008 U.S. App. LEXIS 12638 (2d Cir. June 13, 2008). Here, the IJ's decision contained sufficient reasoning to permit judicial review, and therefore it was not an abuse of discretion for the BIA to summarily affirm the IJ's decision.

***Conclusion***

For the foregoing reasons, we deny the petition for review.