# Matter of R-C-R-, Respondent

*Decided August 31, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) After an Immigration Judge has set a firm deadline for filing an application for relief, the respondent's opportunity to file the application may be deemed waived, prior to a scheduled hearing, if the deadline passes without submission of the application and no good cause for noncompliance has been shown.

(2) The respondent failed to meet his burden of establishing that he was deprived of a full and fair hearing where he has not shown that conducting the hearing by video conference interfered with his communication with the Immigration Judge or otherwise prejudiced him as a result of technical problems with the video equipment.

FOR RESPONDENT: David J. Rozas, Baton Rouge, Louisiana

FOR THE DEPARTMENT OF HOMELAND SECURITY: Dawn M. Carter, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE, KELLY, and GORMAN, Appellate Immigration Judges.

GORMAN, Appellate Immigration Judge:

In a decision dated December 13, 2019, an Immigration Judge found the respondent removable and ordered him removed after determining that he failed to timely submit an application for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").[1] The respondent has appealed from that decision. The appeal will be dismissed.

---

[1] Removal proceedings before the Immigration Judge in this matter were completed in Richwood, Louisiana, where the respondent was located and the hearing was docketed. The Immigration Judge conducted the hearing remotely from the administrative control Immigration Court in Batavia, New York, via video conference pursuant to section 240(b)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1229a(b)(2)(A)(iii) (2018). An administrative control court creates and maintains records of proceedings for

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala, who entered the United States on March 13, 2019.  The Department of Homeland Security ("DHS") detained the respondent and charged him with removability under sections 212(a)(6)(A)(i) and (7)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(A)(i) and (7)(A)(i)(I) (2018), as an alien who is present in the United States without being admitted or paroled and as one who had no valid entry document at the time he applied for admission.

At a video conference hearing held on November 6, 2019, the respondent, who remained detained, appeared without counsel and admitted the factual allegations and charges of removal against him.[2]  Through an interpreter, he indicated that he understood "more Spanish than Mam," and his proceedings continued with interpretation in the Spanish language.  The respondent indicated his desire to apply for asylum, withholding of removal, and relief under the Convention Against Torture and was given an Application for Asylum and for Withholding of Removal (Form I-589) to complete.[3]  The

---

Immigration Courts within an assigned geographical area.  *See* 8 C.F.R. § 1003.11 (2020).  The circuit law applied to proceedings conducted via video conference is the law governing the docketed hearing location, as opposed to the location of the administrative control court.  The docketed hearing location in Richwood, Louisiana, is within the geographic area of the United States Court of Appeals for the Fifth Circuit.  Therefore, like the Immigration Judge, we apply the law of that circuit.  *See, e.g.*, *Luziga v. Att'y Gen. of U.S.*, 937 F.3d 244, 250 (3d Cir. 2019) (applying Third Circuit law where the Immigration Judge appeared by video conference from Arlington, Virginia, (outside the circuit) to preside over proceedings in York, Pennsylvania (within the circuit)); *Medina-Rosales v. Holder*, 778 F.3d 1140, 1143 (10th Cir. 2015) (stating that "the law of the circuit where the video conference hearing is held is the applicable law" and holding that the docketed hearing location does not change merely because an Immigration Judge appears by video conference from a different location).  *But see Chavez-Vasquez v. Mukasey*, 548 F.3d 1115, 1118 n.1 (7th Cir. 2008) ("Venue is determined by the location of the immigration court rather than the by location from which witnesses appear via teleconference."); *Ramos v. Ashcroft*, 371 F.3d 948, 949 (7th Cir. 2004) (denying the Government's request to transfer the proceedings to a different circuit because "the alien may petition for review in the circuit where the immigration court is located").

[2]  The Immigration Judge gave the respondent the procedural advisals required by the regulations, explained the removal charges against him, took pleadings, and found the respondent removable as charged.  *See* 8 C.F.R. § 1240.10(a)(1)–(6), (c) (2020).  The respondent has not challenged the Immigration Judge's finding of removability on appeal, so that issue is not before us.  *See, e.g.*, *Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 496 n.1, 498 n.3 (BIA 2018) (noting that an issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal).

[3]  The Immigration Judge gave the following explanation to the respondent: "You must fill out that application in the English language, you must answer all the questions truthfully,

Immigration Judge explicitly instructed the respondent to submit the completed application to the Immigration Court no later than December 6, 2019, and advised him that his opportunity to file the application would be deemed waived if he failed to comply with the deadline.[4] She also notified the respondent that his next hearing would be scheduled for January 14, 2020.

Despite the Immigration Judge's explicit instructions, the respondent did not file an application for relief from removal by the December 6, 2019, deadline. After an additional week had passed, the Immigration Judge issued a written order on December 13, 2019, finding that the respondent had waived his opportunity to file the application and ordering him removed.

On appeal, the respondent argues that the Immigration Judge erred in finding that he had waived his right to apply for relief and in ordering his removal prior to the hearing scheduled for January 14, 2020. The respondent claims that the Immigration Judge violated his right to due process by requiring him to file the application a month before the next hearing, not allowing him to file an application at that hearing, and not letting him explain the reasons for missing the deadline. The respondent further contends that because he was not given an opportunity to appear at the next scheduled hearing, the record is incomplete and not subject to meaningful review.

Additionally, the respondent argues that he was denied a full and fair hearing because his removal proceedings were conducted via a video conference at which he was unrepresented, detained, and had a Spanish translator. According to the respondent, he "might easily have been confused" about the nature and purpose of the second hearing as a result of these conditions. We review these questions of law de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2020).

---

and if there's any papers or documents that you'd like to attach to that asylum application, regarding your fear of return to Guatemala, if those papers or documents are in the Spanish language, they must be translated to the English language and there must be a certificate of translation which establishes that the person who performed the translation was qualified to do so. Do you understand?" The respondent indicated that he understood.

[4] The Immigration Judge specifically advised the respondent as follows: "I'm going to reset your case to another date to give you time to prepare that application and submit it to the Court. My next date is going to be January 14th, 2020 at 10:00 a.m. I'm going to require that you submit the asylum application to the Court on or before December 6th, 2019. If the Court does not and has not received your application on or before that date, I am going to find that you have abandoned your request for relief. So, it's very, very important that you submit the asylum application to the Court as well as a copy to the Government no later than December 6th, 2019. Do you understand?" The respondent replied, "Yes." The Immigration Judge then suggested that he get a lawyer for his removal proceedings to help him fill out the application. When asked again if he understood, the respondent said, "Yes."

## II. ANALYSIS

An alien who faces removal is entitled to a full and fair removal hearing under both the Act and the Due Process Clause of the Fifth Amendment. *See Santos-Alvarado v. Barr*, 967 F.3d 428, 439 (5th Cir. 2020) ("The Fifth Amendment's Due Process Clause protects individuals in removal proceedings." (citation omitted)); *Vetcher v. Barr*, 953 F.3d 361, 370 (5th Cir. 2020) (stating that "removal proceedings must be conducted according to standards of fundamental fairness"), *petition for cert. filed* (U.S. June 26, 2020) (No. 19-1437); *Matter of M-A-M-*, 25 I&N Dec. 474, 479 (BIA 2011) ("Included in the rights that the Due Process Clause requires in removal proceedings is the right to a full and fair hearing."); *see also* section 240(b)(4)(B) of the Act, 8 U.S.C. § 1229a(b)(4)(B) (2020) (providing that "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government").

To establish that his due process rights were violated, the respondent must prove that there was a deficiency or violation and that he was prejudiced by it. *See Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018) ("To prevail on a claim regarding an alleged denial of due process rights, an alien must make an initial showing of substantial prejudice."); *Matter of D-*, 20 I&N Dec. 827, 831 (BIA 1994) (per curiam) (noting that an alien has been denied a fair hearing "only if he has been prejudiced by some deficiency so as to deprive him of due process"); *Matter of Santos*, 19 I&N Dec. 105, 107 (BIA 1984) (stating that "an alien must demonstrate that he has been prejudiced by a violation of a procedural rule or regulation before his deportation proceeding will be invalidated"). The respondent has not shown that his rights were violated or that he suffered prejudice in his removal proceedings.

### A. Waiver of an Application for Relief From Removal

The Immigration Judge did not err in requiring the respondent to file an application a month prior to his next scheduled hearing, rather than allowing him to submit it at that hearing. "Immigration Judges have broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence." *Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010); *see also* section 240(b)(1) of the Act; 8 C.F.R. §§ 1003.36, 1240.1(c), 1240.7(a) (2020). Immigration Judges also "have authority to set filing deadlines for applications and related documents." *Matter of Interiano-Rosa*, 25 I&N Dec. at 265; *see also* 8 C.F.R. § 1003.31(c) (2020) (providing authority for Immigration Judges to "set and extend time limits for the filing of applications and related documents"). The

Immigration Judge gave the respondent explicit instructions regarding the filing date and clearly warned him that his application for relief would be deemed waived if it was not timely filed.

According to 8 C.F.R. § 1003.31(c), if an application "is not filed within the time set by the Immigration Judge, the opportunity to file that application . . . shall be deemed waived." *See also Choge v. Lynch*, 806 F.3d 438, 440 (8th Cir. 2015) (holding that 8 C.F.R. § 1003.31(c) "clearly states the [Immigration Judge] has the authority to deem applications waived when submitted after the set deadlines" (citation omitted)); *Matter of Interiano-Rosa*, 25 I&N Dec. at 265) ("An application or document that is not filed within the time established by the Immigration Judge may be deemed waived."). The United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this case arises, found in an unpublished decision that an Immigration Judge properly determined that an alien's application for relief was deemed waived because it was not presented within the set deadline. *Mathita v. Lynch*, 631 F. App'x 251, 252 (5th Cir. 2016) (per curiam).

The respondent has not explained his failure to comply with the Immigration Judge's application deadline or identified any difficulties he may have encountered that prevented his compliance. If the respondent required more than the allotted month to complete his application prior to the December 6, 2019, deadline, he could have filed a motion requesting that the Immigration Judge extend the deadline for submitting his application. *See* 8 C.F.R. §§ 1003.23(a), 1003.31(c) (2020). *See generally* 8 C.F.R. §§ 1003.29, 1240.6 (2020) (stating that an Immigration Judge may grant a motion or application for continuance where good cause is shown). Had the respondent established good cause for extending the application deadline, approval of that request would likely have been appropriate. *Cf. Matter of L-A-B-R-*, 27 I&N Dec. 405, 413 (A.G. 2018) (stating that "the good-cause standard . . . requires consideration and balancing of all relevant factors in assessing a motion for continuance to accommodate a collateral matter"). However, the respondent made no such request.

Once the application deadline had passed and the Immigration Judge issued her decision, the respondent could have filed a motion asking her to reconsider the pretermission of his application and submitted a completed application with an explanation for his untimely filing. *See* 8 C.F.R. § 1003.23(b)(1)–(2). Alternatively, he could have filed a motion to reopen, along with his completed application, and requested that it be considered by the Immigration Judge. *See* 8 C.F.R. §§ 1003.23(b)(1), (3), 1208.4(b)(3)(ii) (2020). Had the respondent filed either type of motion and provided good cause for missing the deadline, reconsideration or reopening by the Immigration Judge would likely have been appropriate. However, the

respondent made no attempt to file such a motion with a completed application at any time after the deadline had passed.

The respondent is also required to explain on appeal why he missed the application deadline. *See* 8 C.F.R. § 1003.3(b) (2020). He contends that he "never had the opportunity to present evidence or show cause for the missed deadline." However, he has not provided any explanation or a good cause justification for missing the application deadline, despite being represented by counsel on appeal.[5] Moreover, the respondent has not submitted a motion to remand, along with a completed application, at any time during the pendency of his appeal. *See* 8 C.F.R. §§ 1003.2(b)(1), (c)(4), 1208.4(b)(4) (2020). Nor has he alleged facts on appeal that would constitute a prima facie claim for any form of relief. Had the respondent done so and shown good cause for missing the deadline, a remand may have been appropriate.

The respondent was clearly warned that his application for relief could be deemed waived if he failed to meet the filing deadline set by the Immigration Judge. He has presented no reasonable explanation to the Immigration Judge, or to this Board, to excuse his failure to file the application within the month allotted by the Immigration Judge. Because the respondent did not timely file a completed application for asylum, withholding of removal, and protection under the Convention Against Torture as instructed, we agree with the Immigration Judge that he waived the right to apply for that relief and protection from removal. *See Matter of R-R-*, 20 I&N Dec. 547, 549 (BIA 1992) (stating that "applications for benefits under the Act are properly denied as abandoned when the alien fails to timely file them"); 8 C.F.R. § 1003.31(c).

## B. Full and Fair Hearing

We are unpersuaded by the respondent's argument that his video conference hearing, at which he was unrepresented, detained, and had a Spanish translator, denied him of his due process right to a full and fair hearing.

The respondent has not explained how he was prejudiced as a result of the conditions of his hearing. He indicated that he understood the Spanish

---

[5] The respondent has not claimed that he was prevented from timely filing an application because he was unrepresented. He was advised of his privilege to be represented in removal proceedings and was given a list of free and low-cost attorneys and legal service organizations. *See* 8 C.F.R. § 1240.10(a)(1)–(2) (2020). The respondent hired an attorney to represent him in bond proceedings, and there is no indication that he was deprived of the privilege of being represented by an attorney in removal proceedings or in helping him complete an application for relief.

language best, so he was provided a Spanish interpreter.[6] Our review of the transcript shows no lack of understanding or confusion on the respondent's part. He made no claim at any time during the hearing that he could not understand the interpreter or the Immigration Judge and, on appeal, he has not identified any portion of the hearing where he had such difficulty. *See Matter of K-L-*, 20 I&N Dec. 654, 660 (BIA 1993) (rejecting a due process claim where the alien showed no prejudice because he claimed to speak English, did not request an interpreter, and "failed to specify any portion of the hearing that he did not understand"). He was responsive to the questions asked of him and was able to fully communicate with the Immigration Judge. Consequently, we are not persuaded that the respondent was prejudiced as a result of the Spanish interpretation. *See Matter of D-*, 20 I&N Dec. at 832 (finding there was no showing of "prejudice resulting from a deficiency" in hearings that were conducted in English without an interpreter where the alien indicated he spoke English, did not request an interpreter for himself, and was able to meaningfully participate in the proceedings).

We also find no support for the respondent's contention that his due process rights were violated merely because the Immigration Judge conducted his hearing by video conference. The Act and its implementing regulations specifically provide for hearings via video conference. *See* section 240(b)(2)(A)(iii) of the Act (providing that a removal "proceeding may take place . . . through video conference"); 8 C.F.R. § 1003.25(c) (2020) ("An Immigration may conduct hearings through video conference to the same extent as he or she may conduct hearings in person."). This authority has been consistently recognized by the courts of appeals. *See Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (recognizing that video conference hearings are explicitly authorized by statute); *Aslam v. Mukasey*, 537 F.3d 110, 114 (2d Cir. 2008) (per curiam) (acknowledging that the statutory authority accorded to Immigration Judges to conduct hearings via video conference includes taking the testimony of witnesses); *Rapheal v. Mukasey*, 533 F.3d 521, 531 (7th Cir. 2008) (stating that "Congress specifically authorized proceedings by means of a video conference" and rejecting the alien's challenge to the constitutionality of the implementing regulation).

---

[6]  An alien has a fundamental right to participate meaningfully in the removal proceedings by having them competently interpreted into a language he or she can understand. *See Hartooni v. INS*, 21 F.3d 336, 340 (9th Cir. 1994) ("The right of a person facing deportation to participate meaningfully in the deportation proceedings by having them competently translated into a language he or she can understand is fundamental."); *Matter of Tomas*, 19 I&N Dec. 464, 465 (BIA 1987) ("The presence of a competent interpreter is important to the fundamental fairness of a hearing if the alien cannot speak English fluently.").

Immigration Judges "must conduct immigration hearings in accord with due process standards of fundamental fairness." *Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012) (quoting *Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992)). Due process requires that respondents in immigration proceedings must be given an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted); *see also Aslam*, 537 F.3d at 114 (recognizing the applicability of the due process requirements set out by *Mathews*). However, to prove a due process violation, an alien must demonstrate substantial prejudice. *See Okpala*, 908 F.3d at 971.

Removal proceedings conducted by video conference do not per se violate due process. *See Vilchez*, 682 F.3d at 1199 (stating that "a hearing by video conference does not necessarily deny due process"). In fact, the courts have generally found that such proceedings afford aliens a full and fair hearing. *See, e.g.*, *Aslam*, 537 F.3d at 115 (holding that the alien's "due process rights were not violated at the immigration hearing when a key witness was permitted to provide testimony via videoconference").

The Fifth Circuit has not yet published a decision on this issue. However, in two unpublished decisions, the court has found the use of video conference hearings to be fundamentally fair. *See Jinquan Liu v. Holder*, 566 F. App'x 333, 334 (5th Cir. 2014) (per curiam) (holding that the alien did not demonstrate that he was prejudiced by the video conference hearing, which was "fundamentally fair and did not result in a due process violation"); *Deng Ming Li v. Holder*, 478 F. App'x 884, 887 (5th Cir. 2012) (per curiam) (finding that the alien "failed to show that he was prejudiced by the use of the video-conferencing format, because he did not establish that he was precluded from meaningfully presenting his case").

However, the potential for a video conference hearing to violate the right to a full and fair hearing has been recognized in some circumstances. *See Vilchez*, 682 F.3d at 1199 (acknowledging that "in a particular case video conferencing may violate due process or the right to a fair hearing"); *Rusu v. INS*, 296 F.3d 316, 321–24 (4th Cir. 2002) (explaining that an alien's video conference hearing on an asylum claim may be unfair if the fact-finder has difficulty gauging demeanor for a credibility determination, counsel is unable to privately confer with and advise the alien, or there are insurmountable technological problems with the sound or video quality). For example, a new hearing was required where the alien was unable to review a document that was used to find her not credible and "the lack of a fair hearing 'actually had the potential for affecting the outcome' of the proceedings." *Rapheal*, 533 F.3d at 531–33 (citation omitted). "Whether a particular video-conference hearing violates due process must be determined on a case-by-case basis, depending on the degree of interference with the full

and fair presentation of [the alien's] case caused by the video conference, and on the degree of prejudice suffered by the [alien]." *Vilchez*, 682 F.3d at 1199–1200.

An alien who claims that removal proceedings conducted via video conference violated due process has the burden to show that he or she was prejudiced and denied a full and fair hearing. *See id.* at 1200 (holding that the alien failed to establish that the outcome of his hearing was affected where his claim that his credibility was compromised because of his nervousness about testifying on video was undermined by the fact that the Immigration Judge did not make an adverse credibility finding); *Rusu*, 296 F.3d at 324 ("To prevail on his contention that the video conferencing procedures violated due process, [the alien] must show that better procedures are likely to have made a difference in the outcome of his hearing."). For instance, a denial of due process has not been established where there is insufficient evidence that the video conference equipment was unreliable or defective. *See Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007); *see also Eke v. Mukasey*, 512 F.3d 372, 382–83 (7th Cir. 2008) (finding no prejudice where the alien did not explain how the video conference format prevented the Immigration Judge from considering the evidence in support of his claim, including his physical attributes).

The respondent has not clearly explained how having his hearing via video conference interfered with his communication with the Immigration Judge or otherwise prejudiced him. At the hearing, the respondent was advised of his procedural rights. The Immigration Judge noted that he had a lawyer for his bond hearing but told him that he also had a right to be represented in his removal proceedings. The respondent indicated that he understood and did not have any questions of the Immigration Judge. He similarly acknowledged that he had a right to appeal any decision of the Immigration Judge.

The Immigration Judge then explained the removal charges, and the respondent indicated his understanding. Having explained each allegation in the notice to appear, the Immigration Judge took pleadings from the respondent. The respondent was responsive to each question, was asked whether each allegation was true or false, and did not seek clarification or otherwise indicate any confusion. Based on the respondent's answers, the Immigration Judge concluded that he was removable as charged in the notice to appear.

There are no indicia in the transcript that the respondent and the Immigration Judge were unable to hear or see one another. Moreover, the respondent has not claimed that the video equipment was malfunctioning or defective, and nothing in the transcript suggests that there were any technical problems with the equipment. Absent technical deficiencies or other

examples of error, we find no prejudice to the respondent. Consequently, we conclude that the respondent has not met his burden of establishing that he was denied a full and fair hearing as a result of the use of video conferencing.

## III. CONCLUSION

After an Immigration Judge has set a firm deadline for filing an application for relief, the respondent's opportunity to file the application may be deemed waived, prior to a scheduled hearing, if the deadline passes without submission of the application and no good cause for noncompliance has been shown. The respondent has not explained his failure to comply with the Immigration Judge's application deadline. Nor has he provided good cause to justify his failure, so as to undermine the pretermission of his application. Further, the respondent has not submitted a completed application or alleged facts on appeal that would constitute a prima facie claim for any form of relief. We therefore conclude that the respondent waived the right to apply for relief from removal.

Although the respondent was detained, appeared pro se, and used a Spanish interpreter at his video conference hearing, none of these factors, standing alone or taken together, constitute a denial of due process. The respondent failed to meet his burden of establishing that he was deprived of a full and fair hearing where he has not shown that conducting the hearing by video conference interfered with his communication with the Immigration Judge or otherwise prejudiced him as a result of technical problems with the video equipment. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation. *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).