# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MANUEL VILCHEZ,

Petitioner,

v.

ERIC H. HOLDER Jr., Attorney
General,

Respondent.

No. 09-71070

Agency No.
A043-665-970

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 17, 2012—Pasadena, California

Filed June 19, 2012

Before: Jerome Farris and William A. Fletcher,
Circuit Judges, and Edward R. Korman,
Senior District Judge.*

Opinion by Judge William A. Fletcher

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

**COUNSEL**

Brenda Carolina Diaz, PHUNG MIYAMOTO & DIAZ, LLP, Los Angeles, California, for the petitioner.

William Clark Minick, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Manuel Vilchez, a lawful permanent resident, pled guilty in 2007 to felony domestic battery. He was charged with removability based on this conviction. He conceded removability and applied for cancellation of removal. The Immigration Judge ("IJ") conducted Vilchez's hearing by video conference. The IJ denied Vilchez's application, and the Board of Immigration Appeals ("BIA") affirmed. Vilchez

petitions for review, arguing *inter alia* that the video-conference hearing violated his right to due process. We conclude, in the circumstances of this case, that there was no due process violation.

We deny the petition for review.

## I.   Background

Vilchez is a native and citizen of Peru. He first came to the United States in 1990 when he was twelve. He became a lawful permanent resident in 1995.

Vilchez has a United States citizen son, Tristan, born in 2001, whom he helps support financially. Vilchez's mother, stepfather, three brothers, and sister live in the United States. They are all either citizens or lawful permanent residents. The only member of Vilchez's extended family who does not live in the United States appears to be his maternal grandmother, who lives in Peru.

In 2003, Vilchez pled guilty to possession of controlled substance paraphernalia. Cal. Health & Safety Code § 11364. Entry of judgment was deferred pending completion of a drug program. After Vilchez completed the program, the conviction was dismissed.

In 2005, Vilchez was charged with felony domestic battery resulting in bodily injury. Cal. Penal Code § 273.5(a). The District Attorney subsequently obtained a restraining order against Vilchez. While the domestic battery charge was pending, Vilchez pled guilty to possession of drug paraphernalia and being under the influence of a controlled substance. Cal. Health & Safety Code §§ 11364, 11550(a). He received three years probation and was placed in a drug treatment program.

In 2006, Vilchez was arrested for violating the restraining order. The District Attorney re-filed the felony domestic bat-

tery charge against Vilchez and charged him with violating the order. Cal. Penal Code §§ 166(c)(1), 237.5(a). Vilchez pled guilty to both charges. He was sentenced to ten days in jail and three years of probation, and he was ordered to complete a batterer's treatment program. Vilchez twice violated the terms of his probation by testing positive for amphetamines, resulting in additional incarceration.

In 2008, the Department of Homeland Security served Vilchez with a Notice to Appear, charging him with removability under 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of a crime of domestic violence. At his initial hearing, he conceded removability and applied for cancellation of removal under 8 U.S.C. § 1229b(a).

On December 18, 2008, while Vilchez was performing dishwashing duties at an immigration detention center, industrial strength soap splashed in his left eye, burning his cornea. On January 6, 2009, less than three weeks later, an IJ held a hearing on Vilchez's application for cancellation of removal. The IJ conducted the hearing by video conference. The IJ was in Tucson, Arizona. Vilchez, the witnesses, and the lawyers were all in Lancaster, California.

At the hearing, Vilchez testified about his family situation and his eye injury. He recounted his criminal history and testified that his time in the immigration detention center had changed him for the better. Vilchez's mother, brother, and stepfather testified on his behalf. A letter from the mother of his son, attesting to the hardship that Vilchez's removal would cause their child, was admitted into evidence. Vilchez's former girlfriend, the victim of his domestic violence conviction, did not appear. According to Vilchez's attorney, she was unable to attend because she was "on house arrest." The reason for her house arrest was not explained.

The IJ denied Vilchez's application for cancellation of removal. The IJ found Vilchez statutorily eligible for cancel-

lation, but denied his application as a matter of discretion. The IJ noted Vilchez's strong ties to the United States, the hardship removal would impose on him and his eligible family members, and his admirable record of employment and paying taxes. The IJ also noted several countervailing factors, including Vilchez's substantial criminal record, his multiple drug convictions and probation violations, his disrespect for the law, his failure to modify his behavior, and his domestic violence conviction. Finally, the IJ noted that Vilchez had disregarded his family responsibilities by abusing drugs, and that he had not shown that he was rehabilitated. The IJ concluded that the negative factors outweighed the positive factors.

The BIA affirmed the IJ's decision. The BIA found no due process violation in the IJ's decision to hold Vilchez's hearing by video conference. It noted that the Immigration and Nationality Act ("INA") expressly allows hearings by video conference, even without the alien's consent, 8 U.S.C. § 1229a(b)(2), and that Vilchez neither requested an in-person hearing nor explained how the video-conference hearing prejudiced him.

Vilchez timely petitioned for review.

## II.   Jurisdiction and Standard of Review

We have jurisdiction to review constitutional claims, including due process claims, raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D). Because due process requires the IJ to consider the relevant evidence, *see Larita-Martinez v. I.N.S.*, 220 F.3d 1092, 1095 (9th Cir. 2000), we also have jurisdiction to review whether the IJ considered this evidence in deciding whether to grant cancellation of removal. However, we lack jurisdiction to review the merits of a discretionary decision to deny cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(I); *Bermudez v. Holder*, 586 F.3d 1167, 1169 (9th Cir. 2009) (per curiam).

We review legal and constitutional questions, including alleged due process violations, de novo. *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009). We review factual findings for substantial evidence. *Id.* at 590 F.3d at 747.

Where the BIA conducts de novo review of the IJ's decision, we limit our review to the BIA's decision, except to the extent that the BIA expressly adopted the IJ's decision. *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006). Where the BIA adopted part of the IJ's decision as its own, we treat the incorporated parts as the BIA's. *Aguilar-Ramos v. Holder*, 594 F.3d 701, 704 (9th Cir. 2010).

## III.   Discussion

Vilchez argues that the BIA erred by (1) finding no due process violation in the video-conference hearing and (2) affirming the IJ's denial of his application for cancellation of removal.

### A.   Video-Conference Hearing

**[1]** The INA expressly authorizes hearings by video conference, even without an alien's consent. 8 U.S.C. § 1229a(b)(2)(A)(iii); *see also* 8 C.F.R. § 1003.25(c) ("An Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person."). By contrast, an alien's consent is required for hearings conducted by telephone. 8 U.S.C. § 1229a(b)(2)(B) ("An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference."). Vilchez does not dispute that the IJ had statutory authority to conduct his hearing via video conference. However, he argues that the video conference violated his constitutional right to due process.

**[2]** Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment. *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009). "A due process violation occurs where (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Id.* (citation and internal quotation marks omitted).

**[3]** Our sister circuits have rejected due process challenges to video conferences. *See, e.g., Aslam v. Mukasey*, 537 F.3d 110, 115 (2d Cir. 2008) (per curiam); *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241-42 (6th Cir. 2007). We agree that a hearing by video conference does not necessarily deny due process.

**[4]** We recognize, however, that in a particular case video conferencing may violate due process or the right to a fair hearing guaranteed by 8 U.S.C. § 1229a(b)(4)(B). For example, in *Rapheal v. Mukasey*, 533 F.3d 521 (7th Cir. 2008), the petitioner had been unable to review key documents during a video-conference hearing. The Seventh Circuit held that in this circumstance the video-conference hearing had violated the petitioner's right to a fair hearing guaranteed by § 1229a(b)(4)(B). *Id.* at 532-33 ("'[T]here is no need to invoke the Constitution when the immigration statute itself guarantees a fair hearing.'" (internal citation omitted)). Further, as noted by the Fourth Circuit in *Rusu v. I.N.S.,* 296 F.3d 316, 322 (4th Cir. 2002), video conferencing "may render it difficult for a factfinder in adjudicative proceedings to make credibility determinations and to gauge demeanor," and may thereby violate due process.

**[5]** Whether a particular video-conference hearing violates due process must be determined on a case-by-case basis, depending on the degree of interference with the full and fair presentation of petitioner's case caused by the video confer-

ence, and on the degree of prejudice suffered by the petitioner. In the case before us, we hold that the video-conference hearing did not violate due process. Vilchez contends that his credibility was "erroneously compromised" when he testified by video, rather than in person, because he "appeared nervous" and was "uncomfortable with the video conferencing process." However, the IJ never made an adverse credibility determination. The IJ expressed some skepticism about Vilchez's testimony but that skepticism was based on inconsistencies between the content of Vilchez's testimony and the record evidence. These inconsistencies would have existed even if Vilchez had testified in person.

Vilchez further contends that he was "unable to adequately demonstrate his eye injury to the Court" because the video camera was "never fully focused on him." But Vilchez does not explain how providing the IJ with an in-person hearing would have affected the IJ's decision. The IJ carefully considered, and gave full credit to, Vilchez's claim of hardship arising from his still-fresh eye injury. The IJ stated in his decision:

> The Court does recognize though that the respondent recently has suffered an injury and it appears to be an injury of some serious nature. The respondent's vision in his left [eye] is 20/200, pinholing 220/100, which is improved from last week's figure. However, there is a large central corneal scar and there is a possibility that respondent will need a corneal transplant. Thus, there is substantial indication that respondent would suffer substantial hardship were he to go to Peru where he may not be able to obtain the exact medical care that is necessary to replace that cornea if it is indeed damaged so severely that it must be replaced.

Vilchez also complains about technical problems with the video equipment that made some testimony difficult to hear.

It does appear that the IJ and the participants in the hearing had some difficulty hearing each other at the beginning of the proceeding, but the record indicates that they spoke up when that was the case and worked cooperatively and successfully to address the problem.

**[6]** Vilchez was represented by counsel, testified at length, and had three witnesses speak on his behalf. *See Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926-27 (9th Cir. 2007) ("Where an alien is given a full and fair opportunity to be represented by counsel, to prepare an application for . . . relief, and to present testimony and other evidence in support of the application, he or she has been provided with due process."); *Almaghzar v. Gonzales*, 457 F.3d 915, 921 (9th Cir. 2006) (alien not deprived of due process when allowed to present evidence and testify at length). He has failed to establish that the outcome of his hearing "may have been affected" by the fact that his hearing was conducted by video conference. *Lacsina Pangilinan*, 568 F.3d at 709 (internal quotation marks omitted). We therefore hold there was no due process violation.

## B.   Denial of Cancellation of Removal

**[7]** Vilchez separately challenges the BIA's denial of his application for cancellation of removal. Vilchez does not contend that the BIA applied an incorrect legal standard. *Cf. Mendez-Castro v. Mukasey*, 552 F.3d 975, 979 (9th Cir. 2009). But he does contend that the agency "failed to consider" certain factors, such as the hardship that his removal would cause his son and mother. We disagree. The BIA mentioned Vilchez's United States citizen son and "the hardships likely to result to . . . his family." We agree with the BIA that the IJ's lengthy decision indicates that he "thoroughly reviewed" and "gave due consideration" to all of the positive and negative equities in the record. An IJ "does not have to write an exegesis on every contention." *Najmabadi v. Holder*,

597 F.3d 983, 990 (9th Cir. 2010) (internal quotation marks omitted).

On the merits, the IJ determined, in the exercise of his discretion, that Vilchez did not merit cancellation of removal. The BIA affirmed. We do not have jurisdiction to review this decision.

## Conclusion

**[8]** We hold that the video-conference hearing in this case did not violate due process. We further hold that the agency considered the factors relevant to Vilchez's application for cancellation of removal. We lack jurisdiction to review the BIA's discretionary decision to deny his application.

Petition for Review DENIED in part and DISMISSED in part.