NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BOUBAKF DARME, AKA Boubacar Drame, | No. 18-72457 |
| Petitioner, | 19-73094 |
| | Agency No. A208-930-085 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 8, 2020
Seattle, Washington

Before: BERZON, MILLER, and BRESS, Circuit Judges.
Concurrence by Judge MILLER
Dissent by Judge BERZON

Boubacar Drame, whom the Board of Immigration Appeals identified as

"Boubakf Darme," petitions for review of the Board's dismissal of his appeal from

the immigration judge's denial of his application for asylum, withholding of

removal, and protection under the Convention Against Torture (CAT). Drame also

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

petitions for review of the Board's denial of his motion to remand, as well as its denial of his motion for reconsideration. We have jurisdiction under 8 U.S.C. § 1252(a)(1). We consolidated Drame's petitions, and we deny both.

1.    Substantial evidence supports the agency's adverse credibility finding and, consequently, its conclusion that Drame is not entitled to asylum or withholding. *See Mukulumbutu v. Barr*, 977 F.3d 924, 925–27 (9th Cir. 2020). The record reflects salient inconsistencies between Drame's testimony and other statements concerning whether he was hospitalized after his half-brothers beat him, where he lived while arranging his departure from Senegal, and why he was unsafe at his mother's house even though his half-brothers refused to go there. The explanations Drame advances for those inconsistencies are not "so compelling that no reasonable factfinder could find that [he] was not credible." *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009) (quoting *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003)). And the agency reasonably relied on the summary of Drame's credible-fear interview as an impeachment source because it bears sufficient indicia of reliability—it was "conducted under oath, with contemporaneous notes containing the questions asked," and with the "aid of a[] [Wolof] interpreter." *Mukulumbutu*, 977 F.3d at 926; *see also Matter of J-C-H-F-*, 27 I. & N. Dec. 211, 213–15 (B.I.A. 2018).

2.    Substantial evidence supports the agency's decision to deny CAT

2

relief. An adverse credibility determination is not necessarily fatal to a CAT claim. *Kamalthas v. INS*, 251 F.3d 1279, 1283–84 (9th Cir. 2001). But when the petitioner is found not credible, we may reverse the agency's denial of CAT relief only if the record apart from the petitioner's testimony compels the conclusion that it is more likely than not that the petitioner would be tortured. *Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010). Without the benefit of Drame's testimony, the record does not compel that conclusion. *Id.* at 1049. Drame emphasizes that he submitted an expert report on country conditions along with his motion to remand, but the report stated that its analysis was "[b]ased on the events Mr. Drame describes in his testimony," and therefore it does not independently compel a conclusion in Drame's favor. Nor did the Board overlook the report. To the contrary, the Board specifically cited the page of Drame's brief on which he discussed the report, and it stated that "[i]n light of the adverse credibility finding, [Drame] has not submitted sufficient objective evidence of record to show that any Senegalese official has any interest in torturing him or would acquiesce in any torture of him." Whether or not we would have reached the same conclusion were we weighing the evidence ourselves, we are unable to say that the record compels a contrary conclusion.

3.      The proceedings before the immigration judge did not violate Drame's due process rights. In immigration proceedings, "[a] due process violation

occurs where (1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (quoting *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)).

The alleged translation errors at the hearing did not deprive Drame of due process because he has not shown that a better translation could have changed the outcome. *See Gutierrez–Chavez v. INS*, 298 F.3d 824, 830 (9th Cir. 2002), *amended by* 337 F.3d 1023 (9th Cir. 2003). The translation errors Drame identifies are minor differences mostly on peripheral issues, few of which relate to the adverse credibility finding.

The immigration judge did not prevent Drame from presenting his case by failing to develop the record, refusing to allow Drame to testify on his own behalf, failing to inform Drame of the requirement for corroborating evidence, or evincing any bias or hostility towards him. The merits hearing transcript is replete with open-ended and follow-up questions from the immigration judge on all matters of import, and Drame does not identify any material aspects of his story that the immigration judge failed to elicit. Drame also was informed on several occasions that he needed to gather evidence to support his claims. To the extent that the immigration judge "was unfriendly, confrontational, or acted in an adversarial

4

manner," the exchanges that Drame identifies do not show that the immigration judge was biased or hostile to such a degree that Drame was prevented from presenting his case. *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016).

Nor was Drame denied due process because of ineffective assistance of counsel. We assume, as the Board did, that Drame was represented in at least some capacity by a free legal services provider, Esperanza Legal Services, or by an Esperanza legal assistant who visited Drame once in detention under the supervision of an Esperanza attorney. *See Najmabadi v. Holder*, 597 F.3d 983, 986–87 (9th Cir. 2010). But Drame has not shown that the outcome of his case would have differed had the legal assistant completed Drame's entire Form I-589—the only "legal representation" he received and all that his purported "oral contract" with Esperanza covered. The immigration judge completed that form in detail with Drame at the merits hearing, and Drame does not persuasively argue that the immigration judge would have found him credible if Esperanza had done more in this respect. Nor has Drame shown that the supervising attorney was so ineffective in his supervision of the assistant "as to have impinged upon the fundamental fairness of the hearing." *Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986).

4.    The Board did not abuse its discretion in denying Drame's motion to remand to consider, among other matters, new country-conditions evidence

showing the persecution of gay people in Senegal and medical documents showing that Drame experiences headaches. *See Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857 (9th Cir. 2004). We presume that the Board has reviewed the record, and it was Drame's burden to demonstrate otherwise. *Fernandez v. Gonzales*, 439 F.3d 592, 603 (9th Cir. 2006). Here, the Board recognized that Drame had filed "additional documentary evidence" and determined that the "evidence of record" did not meet Drame's burden to establish relief. *Cf. Larita–Martinez v. INS*, 220 F.3d 1092, 1096 (9th Cir. 2000). Because Drame's asylum, withholding, and CAT claims were all based almost exclusively on his discounted testimony, it was not arbitrary, irrational, or contrary to law for the Board to determine that Drame had not carried his "'heavy burden' of proving that, if proceedings were reopened, the new evidence would likely change the result." *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1025 (9th Cir. 2008); *see also Almaghzar v. Gonzales*, 457 F.3d 915, 921–22 (9th Cir. 2006).

**PETITIONS DENIED**.

*Darme v. Garland*, Nos. 18-72457; 19-73094

FILED

MAR 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MILLER, Circuit Judge, concurring:

I join the court's disposition and reasoning in full. As the court explains, because the agency's adverse credibility finding is supported by substantial evidence, we must deny the petition.

In his brief, Drame states that he is now married to a man. Given the country conditions evidence pertaining to the treatment of gay men in Senegal, that fact may be significant because it provides an independent basis—separate from Drame's discredited testimony—for concluding that he may be subject to persecution. But that fact is not part of the administrative record, and our review is limited to the record before the agency. The appropriate mechanism for presenting new evidence is a motion to reopen filed with the agency, not a brief filed in this court.

*Darme v. Garland*, Nos. 18-72457; 19-73094

BERZON, Circuit Judge, dissenting:

I respectfully dissent. I would grant the petition and remand for further consideration of Drame's ineffective assistance of counsel claim and of the documentary evidence of country conditions he provided in his motion to remand.

1. The Board dismissed Drame's ineffective assistance of counsel claim because Drame had "not sufficiently shown inadequate performance or the required prejudice." Our review is limited to the ground relied on by the Board, *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam), so, like the Board and the majority, I assume Esperanza Legal Services provided Drame representation in some capacity. On that assumption, I would hold the Board erred in determining there was no inadequate performance or prejudice.

"To prevail on a due process challenge to deportation proceedings, [Drame] must show error and substantial prejudice." *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000). "Substantial prejudice is established when 'the outcome of the proceeding may have been affected by the alleged violation.'" *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (quoting *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000)).

The IJ's adverse credibility determination—on which the outcome of all his applications relied—was based in part on the fact that Drame's "claim . . . varied

1

dramatically from his statements at the credible fear interview," and that he "was unable to provide any explanation for these inconsistencies." Drame has subsequently explained many of the inconsistencies cited by the IJ and provided evidence that the Wolof interpretation at his hearing was poor. The retranslation he offers shows several truncated and garbled translations with inconsistent details. I agree with the majority that the explanations "are not 'so compelling that no reasonable factfinder could find that [he] was not credible,'" Opinion at 2 (quoting *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009)). But they are sufficient to conclude that had Esperanza advised Drame to or assisted him in filing a FOIA request to review his credible fear interview, Drame may have been able to offer more coherent testimony to the IJ. This conclusion does not mean that Drame would have been prompted to lie by having a copy of his credible fear interview, but that he may have been better prepared so that his testimony was not "vague" or "lack[ing] detail" on the inconsistencies the IJ identified.

For example, Drame now explains that the actual assault lasted twenty to thirty minutes, but the full confrontation with his relatives in the market lasted for roughly an hour. This account is a plausible explanation, particularly given the difficulty of determining exactly how long a beating lasted, and Drame may have been able to be more specific in his testimony at the hearing if he had access to the credible fear notes. Those notes also indicate that he spent two days in the hospital

2

after being beaten, but he later testified that he went to a clinic's pharmacy two times to get painkillers. Given language differences and the poor translation throughout the record, the differences between "clinic" and "hospital" and "on two days" and "for two days" are possible to credit to translation or to cultural understanding. Similarly, the difference between "calling" someone on the phone and "calling on" someone at their home, which the IJ and BIA treated as a change in testimony, relies on a subtle linguistic distinction. Had Drame been prepared to give testimony taking these subtleties into account, he may have affected the credibility determination and thus the outcome of the proceedings. *See Colmenar*, 210 F.3d at 971.

I would therefore remand for a determination in the first instance of whether Esperanza or either Dominguez or Arellano were acting as Drame's counsel.

2. I would also grant the petition as to Drame's motion to remand for consideration of his CAT claim. The Board ignored significant country conditions evidence that could support a determination that Drame would more likely than not be tortured with the acquiescence of the government if he is removed to Senegal.

As the majority correctly notes, a negative credibility determination does not preclude relief under CAT. *Kamalthas v. INS*, 251 F.3d 1279, 1283–84 (9th Cir. 2001). The majority nevertheless discounts Dr. Walker-Said's expert report because it analyzed risk to Drame "[b]ased on the events Mr. Drame describes in

3

his testimony." Opinion at 3. The report focuses on the treatment of gay men, and particularly Muslim gay men, in Senegal, discussing in that context the plausibility of Drame's account given the social conditions of Senegal and the likely future harm to Drame given his testimony. For example, the report explains that "persons who flout Muslim tradition are not only disinherited by their kin and community, they are also often intimidated, or even killed, in retribution for disrupting community norms and expectations," and that law enforcement "would actually be motivated to help [Drame's] community mete out his punishment, since his sexuality and lifestyle is viewed as forbidden at all levels of Senegalese society." This report is much more detailed and specific than the general country conditions report Drame initially provided. Notably, the IJ's adverse credibility finding did not contest Drame's sexuality, and Drame is now married to a man, putting him at risk of the violence Dr. Walker-Said described.

The Board's decision referenced the "additional documentary evidence," but its discussion of the motion to remand focused on the ineffective assistance of counsel claim and only briefly mentioned that "the purported expert opinion on country conditions do[es] not address or explain the noted inconsistencies that formed the basis of the Immigration Judge's adverse credibility finding." This analysis improperly relies on the adverse credibility determination and ignores the specific and probative evidence in the expert affidavit about the treatment of gay

4

men in Senegal. We have held that the BIA abused its discretion when it has failed to consider evidence in the record of torture of specific groups of which the petitioner is a part, even given a negative credibility determination. *Kamalthas*, 251 F.3d at 1283–84 (remanding given evidence of widespread torture of Tamil males in Sri Lanka); *Guan v. Barr*, 925 F.3d 1022, 1036 (9th Cir. 2019) (remanding to consider evidence of torture of Chinese Christians). I would therefore grant the petition and remand for the Board to properly consider the country conditions evidence Drame provided.