Filed 5/15/24  RND Contractors v. Cal. Occupational Safety and Health Appeals Bd. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RND CONTRACTORS, INC., | |
| Plaintiff and Appellant, | G063241 |
| v. | (Super. Ct. No. CIVSB2119442) |
| CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | O P I N I O N |
| Defendant and Respondent; | |
| CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | |
| Real Party in Interest and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Donald R. Alvarez, Judge.  Affirmed.  Appellant's Amended Request for Judicial Notice.  Granted in part and denied in part.  Respondent's Request for Judicial Notice.  Granted in

part and denied in part. Appellant's Second Request for Judicial Notice. Denied. Appellant's Third Request for Judicial Notice, filed as Appellant's Opposition to Respondent's Objection to Its Second Request for Judicial Notice and Amended Request for Judicial Notice. Denied.

Donnell, Melgoza & Scates, Manuel M. Melgoza and Perry P. Poff for Plaintiff and Appellant.

J. Jeffrey Mojcher, Chief Counsel, Aaron R. Jackson, F. Elizabeth Clarke and Vincent J. Mersich, Staff Counsel for California Occupational Safety and Health Appeals Board.

No appearance for Real Party in Interest and Respondent.

\* \* \*

During the COVID-19 pandemic, California Governor Gavin Newsom issued an executive order suspending the right of parties to object to conducting hearings by videoconference. In a matter pending before the California Occupational Safety and Health Appeals Board (Board), the administrative law judge overruled the objection of RND Contractors, Inc. (RND) to conducting its appeals hearing by videoconference. RND sought a declaration from the trial court that the Board did not have the authority to mandate videoconference hearings without complying with the Administrative Procedures Act, Government Code section 11340 et seq. (APA). The court denied RND's request for declaratory relief, and this appeal followed.

We conclude the Board did not violate the APA and did not engage in underground rulemaking by mandating videoconference hearings in response to the Governor's Executive Order No. N-63-20 (May 7, 2020) (Order N-63-20). We further conclude the Board had the authority at all times relevant to this appeal to conduct the appeals hearing in this case by videoconference. We affirm.

STATEMENT OF FACTS

On April 9, 2020, the California Department of Industrial Relations, Division of Occupational Safety and Health (Division) cited RND for violating sections 1670(f), 1709(d), and 1710(g) of title 8 of the California Code of Regulations in connection with an accident that resulted in the death of an RND employee. RND timely filed an administrative appeal to the Board.

In October 2020, the Board gave notice that the hearing on RND's appeal would be conducted by videoconference on February 11, 2021. RND filed an objection to conducting the hearing by videoconference, as well as a motion to change the venue and a request for a stay. The objection was overruled, and the motion and request were denied. RND requested reconsideration of that order and again requested a stay. The Board denied RND's requests on February 23, 2021.

Before the Board denied RND's stay request, a hearing took place by videoconference on February 11, 2021. It was not, however, a hearing on the merits; only nonevidentiary matters were discussed, the hearing lasted less than 15 minutes, and those involved agreed to a new date in July 2021 to begin the appeals hearing.

Thereafter, the appeals hearing was continued and rescheduled numerous times. Appeals hearings were held March 17, 2022, January 31, 2023, June 7, 2023, and June 8, 2023.[1] Written notice was given that each of these hearings would be conducted by videoconference. RND objected to conducting the March 17 hearing by videoconference. Under Government Code section 11440.30, as amended effective January 1, 2022 (Stats. 2021, ch. 401, § 13), the administrative law judge overruled RND's objection. Although the appellate record does not reflect objections by RND to the other hearings being conducted by videoconference, for purposes of this appeal, we

---

[1] The appeals hearing was not yet concluded as of the date of oral argument.

3

analyze the issue as if RND's objections to the March 17, 2022 videoconference hearing applied to the later hearings as well.

PROCEDURAL HISTORY

In March 2021, RND filed a petition for writ of administrative mandamus. The Board and the Division demurred to the petition on the ground RND had failed to exhaust its administrative remedies. The trial court overruled the demurrer but deemed the petition to be a complaint for declaratory relief "on whether the regulations providing for videoconference hearings are valid under the APA." The court heard oral arguments on that issue on July 29, 2022. After permitting supplemental briefing and holding a further hearing, the court issued a final ruling on December 6, 2022.[2] The court denied RND's request for a declaration that the Board had engaged in underground rulemaking or improperly implemented videoconference hearings without ADA compliance. The court declared, "the Board is and was permitted to implement videoconferences or Zoom appeal hearings without compliance with the APA when implementing solely Government Code section 11440.30 rights and standards." RND filed a timely notice of appeal to this court.

DISCUSSION

I.

STANDARD OF REVIEW

The trial court's ruling denying declaratory relief is reviewed for abuse of discretion. (*Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 290.) We

---

[2] Although the trial court deemed the petition a complaint (and ordered the Board and Division to file answers to it), it proceeded to rule on the substantive issue as if it were a petition, without waiting for either party to file a dispositive motion on the "complaint." It appears no party objected to this unorthodox procedure, however, and it has not been asserted to be error on appeal.

review the court's factual findings for substantial evidence, and we review any legal issues de novo. (*Ibid.*)

## II.

### ADMINISTRATIVE PROCEDURES ACT

"'The APA is intended to advance "meaningful public participation in the adoption of administrative regulations by state agencies" and create "an administrative record assuring effective judicial review." [Citation.] In order to carry out these dual objectives, the APA (1) establishes "basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations" [citation] which give "interested parties an opportunity to present statements and arguments at the time and place specified in the notice and calls upon the agency to consider all relevant matter presented to it," and (2) "provides that any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court." [Citation.] The APA was born out of the Legislature's perception there existed too many regulations imposing greater than necessary burdens on the state and particularly upon small businesses.'" (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 424–425.)

A "regulation" is a rule, order, or standard of general application adopted by a state agency to implement, interpret, or make specific the law it enforces or administers, or to govern the agency's own procedures. (Gov. Code, § 11342.600; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 (*Tidewater*).) State agencies generally must follow the procedures established in the APA when adopting or amending regulations, including providing the public with notice of proposed regulations (Gov. Code, §§ 11346.4, 11346.5), giving interested parties an opportunity to comment on proposed regulations (*id.*, § 11346.8), and responding in writing to submitted written comments (*id.*, §§ 11346.8, 11346.9). Regulations adopted without following these

5

procedures are referred to as underground regulations and are void. (See Cal. Code Regs., tit. 1, § 250, subd. (a); *Tidewater, supra*, 14 Cal.4th at pp. 572–573.)

"A regulation subject to the APA thus has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.'" (*Tidewater, supra*, 14 Cal.4th at p. 571.) But not all agency interpretations are regulations. For instance, "interpretations that arise in the course of case-specific adjudication are not regulations, though they may be persuasive as precedents in similar subsequent cases." (*Ibid.*; see also *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 556 [interpretations "announced in the context of resolving a specific case" are not regulations under the APA].)

III.

RULES REGARDING BOARD HEARINGS

In 2020 and 2021, Government Code section 11440.30 read as follows: "(a) The presiding officer may conduct all or part of a hearing by telephone, television, or other electronic means if each participant in the hearing has an opportunity to participate in and to hear the entire proceeding while it is taking place and to observe exhibits. [¶]

(b) *The presiding officer may not conduct all or part of a hearing by telephone, television, or other electronic means if a party objects*." (Italics added.)[3]

Otherwise, the Legislature has given the Board the authority to create its own rules and regulations applicable to appeals hearings, subject to the APA. "The appeals board, acting as a whole, may adopt, amend, or repeal rules of practice and procedure pertaining to hearing appeals and other matters falling within its jurisdiction. All such rules, amendments thereto, or repeals thereof shall be made in accordance with the provisions of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code." (Lab. Code, § 148.7.)[4]

The Board's rules and regulations regarding appeals hearings are set forth in title 8 of the California Code of Regulations. "These rules of practice and procedure of the Occupational Safety and Health Appeals Board shall govern all appeals, contests, motions, hearings, petitions, and proceedings before the Appeals Board and an Administrative Law Judge of the Appeals Board, arising from actions by the Division of Occupational Safety and Health taken pursuant to Part 1 (commencing with Section 6300) of Division 5 of the Labor Code or Section 2950 of the Health and Safety Code, or

---

[3] Government Code section 11440.30 was amended, effective January 1, 2022, to authorize the presiding officer to "structure the hearing to address the party's specific objections" (*id.*, subd. (b)(2)), among other changes. (Stats. 2021, ch. 401, § 13.) Subdivision (b) of that section now reads: "(1) Except as provided in paragraph (2), the presiding officer may not conduct all of a hearing by telephone, television, or other electronic means if a party objects. [¶] (2) If a party objects pursuant to paragraph (1) to a hearing being conducted by electronic means, the presiding officer shall consider the objections and may, in the presiding officer's discretion, structure the hearing to address the party's specific objections and may require the presiding officer, parties, and witnesses, or a subset of parties and witnesses based on the specific objections, to be present in a physical location during all or part of the hearing." (Gov. Code, § 11440.30, subd. (b).)

[4] Chapter 3.5 of the APA addresses rulemaking; chapter 4.5 addresses hearing procedures.

for employers' cost recovery pursuant to Section 149.5 of the Labor Code." (Cal. Code Regs., tit. 8, § 345.)

In 2020, the relevant regulation regarding hearings by the Board did not specifically address videoconferences; it provided: "The Appeals Board shall set the place of the hearing at a location as near as practicable to the place of employment where the violation is alleged to have occurred. When making this determination, the Appeals Board's evaluation will include the location of Appeals Board hearing venues, the availability of Administrative Law Judges, the location of the parties and the witnesses." (Cal. Code Regs., tit. 8, former § 376, subd. (d).)[5]

IV.

SUSPENSION OF THE RIGHT TO OBJECT TO VIDEOCONFERENCE HEARINGS AS A RESULT OF THE COVID-19 PANDEMIC

Through the California Emergency Services Act (Gov. Code, § 8550 et seq.), the Legislature has provided the Governor of the State of California with emergency powers "to mitigate the effects of natural, manmade, or war-caused emergencies that result in conditions of disaster or in extreme peril to life, property, and the resources of the state, and generally to protect the health and safety and preserve the lives and property of the people of the state." (*Id.*, § 8550.) One of the emergency powers granted to the Governor is the power to "suspend any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency . . . where the Governor determines and declares that strict compliance with any statute, order, rule, or regulation would in any way prevent, hinder, or delay the mitigation of the effects of the emergency." (*Id.*, § 8571.)

---

[5] In 2022, the Board followed and completed the rulemaking process to enact a regulation allowing all hearings to be conducted by videoconference; the new regulation became effective July 1, 2023. (Cal. Code Regs., tit. 8, § 376, subd. (d), Register 2023, No. 17 (June 2, 2023) p. 8:1-310–311; Cal. Reg. Notice Register 2022, No. 17-Z, pp. 491–495.).

"[T]he Emergency Services Act makes clear that in situations of 'extreme peril' to the public welfare the State may exercise its sovereign authority to the fullest extent possible consistent with individual rights and liberties." (*Macias v. State of California* (1995) 10 Cal.4th 844, 854.)

In 2020, during the COVID-19 pandemic, the Governor used his authority under the California Emergency Services Act to, among other things, suspend in-person hearings by the Board: "Whereas under the provisions of Government Code section 8571, I find that strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic. [¶] . . . [¶] It is hereby ordered that: [¶] . . . [¶] (11) *Any statute or regulation that permits* a party or witness to participate in a hearing in person, a member of the public to be physically present at the place where a presiding officer conducts a hearing, or *a party to object to a presiding officer conducting all or part of a hearing by telephone, television, or other electronic means, is suspended*, provided that all of the following requirements are satisfied: [¶] (a) Each participant in the hearing has an opportunity to participate in and to hear the entire proceeding while it is taking place and to observe exhibits; [¶] (b) A member of the public who is otherwise entitled to observe the hearing may observe the hearing using electronic means; and [¶] (c) The presiding officer satisfies all requirements of the Americans with Disabilities Act and Unruh Civil Rights Act." (Order N-63-20, italics added.) The provisions of paragraph 11 of Order N-63-20 expired as of June 30, 2021, pursuant to the terms of the Governor's Executive Order No. N-08-21 (June 11, 2021) (Order N-08-21).

"[U]nder the Emergency Act the Governor may 'make, amend, and rescind orders and regulations' which 'shall have the force and effect of law' and take effect immediately." (*640 Tenth LP v. Newsom* (2022) 78 Cal.App.5th 840, 852.) "By its own plain terms, the Governor's authority under [Government Code] section 8571 to suspend 'any regulatory statute' includes the APA." (*Id.* at p. 854.)

9

Beginning in May 2020, the Board began the process of establishing protocols for conducting videoconference hearings. This resulted in instructions for attending Zoom hearings that were attached to notices of videoconference hearings.

V.

THE BOARD DID NOT VIOLATE THE APA BY CONDUCTING VIDEOCONFERENCE HEARINGS

RND argues the implementation of hearings by videoconference constituted underground rulemaking by the Board and therefore violated the APA. The Board contends no underground rulemaking occurred and, in fact, no rulemaking was necessary because the Board already had existing statutory and regulatory authority to conduct videoconference hearings. Specifically, at the time the Board scheduled the hearing on RND's appeal, Government Code section 11440.30, subdivision (a), authorized the Board to conduct remote hearings by electronic means, including by videoconference. Although at that time section 11440.30, subdivision (b) gave RND the right to object to conducting the hearing by electronic means, Order N-63-20 suspended RND's right to object to the hearing from taking place by electronic means.

In denying RND's request for declaratory relief, the trial court found: "Arguably, undisputed, the Board intended to have videoconference hearings apply across the board to all proceedings. However, nothing is presented of the Board adopting or implementing any procedure for holding videoconference hearings. Rather, the Board is merely holding videoconference hearings permitted by Government Code section 11440.30, subject to the right of a party to object and have that objection considered, as outlined in the statute. Put differently, the Board is merely acting under the authority provided by the statute. It is not adopting or implementing anything; it is merely stating hearings are held by videoconference, as permitted by Government Code section 11440.30. And RND offers no analysis, argument, evidence, or authority that the Board needs to pass a regulation per the APA to comply with a statute. Based on this, Board has not implemented any regulation."

10

We agree no underground rulemaking or regulatory implementation occurred when the Board developed and implemented the necessary procedures to comply with Order N-63-20's suspension of the right to object to videoconference hearings.[6]

RND argues the Board *could* have used the emergency rulemaking procedures set forth in Government Code section 11346.1 to implement hearings by videoconference. RND contends the "emergency rulemaking process is abbreviated, compared to the regular rulemaking process, but still requires public participation." RND fails to develop this argument any further, or to provide any specifics as to the time frame involved in the expedited, emergency rulemaking process. More important, however, the argument misses the point: It is clear the Governor's executive order suspending objections to videoconference hearings took effect immediately. (Gov. Code, § 8567, subd. (b); *640 Tenth LP v. Newsom, supra*, 78 Cal.App.5th at p. 856 [APA cannot apply when executive orders to which changes to existing regulations must abide take effect immediately].) RND therefore fails to show that emergency rulemaking procedures were necessary.

One of RND's primary arguments is that the Board improperly used the provisions of sections 11400–11475.70 of the Government Code—addressing administrative adjudication—to make new regulations without going through the proper

---

[6] Order N-63-20's suspension of the right to object to videoconference hearings is contingent on the satisfaction of three requirements. RND does not contend the Board failed to comply with any of those requirements.

In other arenas, California courts have determined that use of videoconference hearings due to the COVID-19 pandemic was authorized. (*People v. Whitmore* (2022) 80 Cal.App.5th 116, 124–126 [criminal defendant's due process right to be present at sentencing and other critical proceedings was not denied by use of videoconferencing during COVID-19].)

11

procedures.  As explained above, however, the Board did not engage in any rulemaking procedures.

RND next argues videoconference hearings deprive the participants of various rights, including, among others, the right to have counsel and a representative present together in person at the hearing "to help one another."  (Cal. Code Regs., tit. 8, §§ 378, 379.)  But the original regulations RND cites do not provide the specific rights RND now claims were infringed upon.  For instance, sections 378 and 379 simply allow a party to be represented at a hearing by a non-attorney representative and prohibit a party, a party's representative, and the inspector from the Division from being excluded from the hearing if witnesses are excluded.  There is no right to be together in one room to help each other.

In its appellate briefs, RND also argues the videoconference hearings deny it due process, although it fails to specify any particular aspect of the videoconference hearings that does so.  At oral argument, RND's appellate counsel asserted a due process right to present oversize exhibits and to observe in person the body language of witnesses.  We find no such due process rights.  We note both state and federal courts have held parties to civil or administrative proceedings do not have a due process right to be physically present at a hearing on their matter.  (*Arnett v. Office of Admin. Hearings* (1996) 49 Cal.App.4th 332, 338–339 [incarcerated physician did not have due process right to be personally present at hearing of medical board]; *Vilchez v. Holder* (9th Cir. 2012) 682 F.3d 1195, 1199 [in immigration proceedings, "a hearing by video conference does not necessarily deny due process"].)  We see no reason why due process rights would be greater in the administrative proceeding at issue here.

Procedural due process requires notice and the opportunity to be heard. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)  A fair hearing focuses on the opportunity to be heard:  All parties must be given an adequate opportunity to present and argue their case, which RND has been

12

afforded via videoconference hearings. Although RND might find it ideal (or at least preferable) to have in-person hearings, parties are not guaranteed a perfect hearing. (*Barclay Hollander Corp. v. California Regional Water Quality Control Bd.* (2019) 38 Cal.App.5th 479, 513 ["'""The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations"'""].) The other party at the hearings, the Division, is subject to the same procedures as RND; RND suffered no special prejudice by being required to appear remotely.

RND contends the use of videoconferencing for hearings violates the separation of powers doctrine. The statutes under which the Governor's executive order was issued have been determined not to violate the separation of powers. (See *LaCour v. Marshalls of California, LLC* (2023) 94 Cal.App.5th 1172, 1185–1189; *Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1113–1114.)

RND argues it was prejudiced by the inconsistent application of the videoconferencing rules. But RND cites only rulings in other cases pending before the Board, not this one. RND does not contend the administrative law judge in this matter imposed any new rules in a manner inconsistent or in conflict with the Board's existing regulations.

We note that Order N-63-20 only suspended the right to object to videoconference hearings; it did not prohibit hearings from taking place or stop the clock on notice, hearing, and appeal periods for violations of the Labor Code and the Code of Regulations. (See generally Lab. Code, §§ 6600–6602.) The California Occupational Safety and Health Act of 1973, under which the Board exists and acts, was "enacted for the purpose of assuring safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for research, information, education, training, and enforcement in the field of

13

occupational safety and health." (Lab. Code, § 6300.) The purposes of the California Occupational Safety and Health Act of 1973 would not have been served—indeed, would have been thwarted—by staying all Board hearings on health and safety violations for an indefinite period during the COVID-19 pandemic.

The public interest in timely adjudication of the citations against RND is compelling. This case involved allegations of serious safety violations that resulted in the death of an employee.[7] A "'serious violation'" classification indicates the Division believes there is a realistic possibility that death or serious physical harm could result from the actual hazard created by the violation. (Cal. Code Regs., tit. 8, § 334, subd. (c)(1).) RND was cited for violating California Code of Regulations, title 8, sections 1709, subdivision (d) and 1710, subdivision (g)(1), which address the building's design load strength and structural steel erection. Section 1710 provides, in part: "This section sets forth requirements *to protect employees from the hazards* associated with steel erection activities involved in the construction, alteration, and/or repair of single and multi-story buildings, bridges, and other structures where steel erection occurs." (*Id.*, subd. (a)(1), italics added.)

---

[7] The allegations of the citation include the following: "Prior to and during the course of the investigation including, but not limited to October 9, 2019, during the erection of a building, the employer failed to: [¶] 1. Have an erection plan and procedure prepared by a civil engineer currently registered in California. [¶] 2. Follow Employer's erection plan and procedure by not following the bolting schedule. Employer used an incorrect bolts [*sic*] and failed to weld after placement of the bolts. [¶] As a result, on or about October 9, 2019, an employee anchored onto the beam was fatally injured when the bolts failed and the beam fell." "Prior to and during the course of the investigation, including but not limited to October 9, 2019, the employer released the solid web structural member (beam) from the hoisting line before securing it with at least two bolts per connection of the same size and strength as shown in the erection drawings. [¶] As a result, on or about October 9, 2019, an employee anchored onto the beam was fatally injured when the bolts failed and the beam fell."

Ultimately, RND's arguments pertaining to prejudice, such as the inability to use oversize exhibits and to have counsel present in the same room as the witness being questioned, are significantly outweighed by the public interest in abating potentially unsafe conditions, preventing serious injury or death to employees, and avoiding a backlog of appeals.[8]

VI.

NO EVIDENTIARY HEARINGS WERE CONDUCTED IN THIS CASE AT A TIME WHEN RND HAD A RIGHT TO PREVENT A VIDEOCONFERENCE HEARING BY OBJECTING

The parties agree the new regulation authorizing hearings to be conducted by videoconference "if each participant in the hearing has an opportunity to participate in and to hear the entire proceeding while it is taking place, to observe the exhibits, and to observe the hearing participants to the extent feasible," became effective July 1, 2023. (Cal Code Regs., tit. 8, § 376, subd. (d).)  The parties further agree this new regulation was adopted following proper procedures under the APA and is not at issue on this appeal.

The parties also agree that Order N-63-20, which suspended RND's right to object to conducting a hearing by videoconference, expired effective July 1, 2021. (Order N-08-21.)  That means four days of evidentiary appeals hearings took place in this case during the period between the expiration of Order N-63-20 and the effective date of the revised regulation:  March 17, 2022, and January 31, June 7, and June 8, 2023.[9]  The question then becomes whether RND had a right to preclude those four days of

---

[8]  In light of our decision, we need not address the Board's arguments that its interpretation of its authority under the regulations must be given great weight unless that interpretation is clearly erroneous and that the appeal is moot because RND failed to exhaust its administrative remedies.

[9]  As noted above, for purposes of this appeal we assume, without deciding, that RND's objection to proceeding by videoconference on March 17, 2022, was sufficient to preserve its objection to the other three hearings proceeding by videoconference as well.

15

videoconference hearings simply by objecting.  The answer is no.  The reason is found in an amendment to Government Code section 11440.30.  Effective January 1, 2022—well before the four hearing days in question—Government Code section 11440.30 was amended to allow a party to object to conducting a hearing by electronic means, but to also give the hearing officer the discretion to nevertheless proceed with a videoconference hearing.[10]

By its plain terms, amended Government Code section 11440.30 unquestionably authorizes a presiding hearing officer to exercise its discretion to conduct a hearing by videoconference *despite* a party's objection.  The record here shows the hearing officer considered RND's objection that a videoconference hearing would interfere with its ability to present evidence and found it "demonstrably without merit." The hearing officer overruled RND's objections because the architectural drawings could

---

[10]  The statute provides, in full:  "(a) The presiding officer may conduct all or part of a hearing by telephone, television, or other electronic means if each participant in the hearing has an opportunity to participate in and to hear the entire proceeding while it is taking place and to observe exhibits.  [¶]  (b) (1) Except as provided in paragraph (2), the presiding officer may not conduct all of a hearing by telephone, television, or other electronic means if a party objects.  [¶]  (2) If a party objects pursuant to paragraph (1) to a hearing being conducted by electronic means, the presiding officer shall consider the objections and may, in the presiding officer's discretion, structure the hearing to address the party's specific objections and may require the presiding officer, parties, and witnesses, or a subset of parties and witnesses based on the specific objections, to be present in a physical location during all or part of the hearing.  [¶]  (c) Subdivision (b) is not a limitation on the presiding officer transmitting the hearing by telephone, television, or other electronic means or receiving comments via electronic means from participants who are not parties or witnesses." (Gov. Code, § 11440.30, as amended by Stats. 2021, ch. 401, § 13.)

The APA applies to quasi-legislative acts by agencies, not to legislative acts by the Legislature.  RND's argument that the Board engaged in underground rulemaking cannot be applied to the Legislature's amendment of this statute.

16

be effectively presented over Zoom and because he found "certain benefits will inure to the parties by utilizing the exhibits in digital form, versus in printed/physical form."[11]

RND contends this statute does not apply, citing Government Code section 11346, subdivision (a). We disagree. Section 11346, subdivision (a) provides, "This chapter shall not be superseded or modified by any subsequent legislation except to the extent that the legislation shall do so expressly." But section 11346 is part of *Chapter 3.5*, which addresses administrative regulations and rulemaking, not administrative hearing procedures. Hearing procedures are governed by *Chapter 4.5*, of which section 11440.30 is a part. The amendment to section 11440.30 that permits videoconference hearings over a party's objections did not supersede or modify Chapter 3.5's rules on how quasi-legislative rules and regulations are to be enacted.

## VII.

### JUDICIAL NOTICE

*A.  Board's Request for Judicial Notice*

The Board filed a request for judicial notice on August 24, 2023, attaching exhibits A through M.

We grant the request as to exhibits A, C, D, and L, of which the trial court took judicial notice. (Evid. Code, § 459, subd. (a)(1) ["reviewing court shall take judicial notice of . . . each matter properly noticed by the trial court"].)

Exhibit K is a copy of California Law Revision Commission comments. The parties may cite to California Law Revision Commission comments without judicial

---

[11]  The hearing officer also determined the other objections raised by RND to a videoconference hearing were moot because they had been overruled in a previous order. Those objections were that (1) the Board had implemented Zoom hearing procedures by means of underground rulemaking, (2) conducting hearings via the Zoom platform constituted a denial of due process protections, and (3) Order N-63-20 was unconstitutional.

notice.  (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 571, fn. 9.)  We therefore deny the request as to this exhibit.

Exhibits B, E, G, H, I, J, and M are all official acts of the executive department of this state.  (Evid. Code, §§ 452, subd. (c) [trial court may take judicial notice of "Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States"], 459, subd. (a) ["reviewing court may take judicial notice of any matter specified in Section 452"].)  Although exhibits I, J, and M were created postjudgment, they are still relevant to understanding the timeline of the appeal.  We grant the request as to these seven exhibits.

The Board requests we take judicial notice of exhibit F, a motion for continuance filed by RND on June 17, 2022, as a document contained in the Board's records, pursuant to Evidence Code section 452, subdivisions (c) and (h).  This document is neither an official act of the Board nor a fact or proposition not reasonably subject to dispute and capable of immediate and accurate determination.  We deny the request to take judicial notice of exhibit F.

## B.  RND's Amended First Request for Judicial Notice

RND's amended request for judicial notice filed July 31, 2023, attached three documents.  Attachment A consists of various orders and notices from the Board's files regarding the hearings on this matter.  These documents are official acts of an executive department of this state and are relevant to this appeal.  (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)  Attachment B consists of the Board's records of its notice to the public of proposed rulemaking regarding videoconference hearing procedures and public responses.  Although the notice is an official act of the Board, neither the notice nor the public comments is relevant to this appeal.  Attachment C is a final statement of reasons regarding the rule changes regarding videoconferencing for hearings.  Although the statement is an official act of the Board, it also is not relevant to this appeal.  We will

18

take judicial notice of attachment A to the amended request for judicial notice, but deny the request for judicial notice of attachments B and C.

## C. RND's Second Request for Judicial Notice

On September 13, 2023, RND filed a second request for judicial notice that attached a single document, labeled attachment B. It is a petition for reconsideration in a different matter pending before the Board, *In the Matter of the Appeal of Arriaga USA, LLC, dba Stoneland*, Inspection No. 1279492 (*Appeal of Arriaga*). This document is not relevant to the present appeal, and we therefore deny the request to take judicial notice of it.

## D. RND's Third Request for Judicial Notice

On September 15, 2023, RND filed appellant's opposition to respondent's objection to its second request for judicial notice and amended request for judicial notice. Three documents were attached, labeled attachments C, D, and E. All are documents from a different matter before the Board, *Appeal of Arriaga*. These documents are not relevant to the present appeal, and we therefore deny the request to take judicial notice of them.

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

GOODING, J.

WE CONCUR:

GOETHALS, ACTING P. J.

DELANEY, J.

19
